In this case, there are genuine issues of disputed material facts as to whether there was a seizure and whether that seizure was reasonable. And in viewing the available evidence, which is circumstantial, and the inferences which are reasonably drawn from that evidence, this is a case when viewing the evidence in the light most favorable to the appellant should preclude the granting of summary judgment. What would you have to prove to prevail at trial? Your Honor, I would believe at this stage we would have to show number one. No, no. Let's assume we send it back. We buy your argument. This is hypothetical. I would have to prove that it was a constitutional violation of the Fourth Amendment, that, first of all, it was unreasonable force, given the totality of the circumstances. The use of force was unreasonable. And then, of course, after proving that, then the issue of the policy or the lack of policy would be appropriately before the court or before the jury, as well as the claims regarding supervision and lack of training. Would you have to prove that the canine officer's actions were negligent or intentional? I would have to prove they are intentional, as that term is used in the context of the Fourth Amendment violation, Your Honor. Intentional in what respect? Intentional in that his actions brought about the desired result through an application of force, even though Ms. Gangster was certainly not the intended target or subject of that under Bower v. O'Neill County. So you wouldn't have to prove that Mrs. Gangster was the intended victim of the bite? Correct, if she was not. Judge Breyer. I could just ask you to clarify. So I understand that you would want us to adopt a rule like the Fourth Circuit that if the officer unleashed or let the dog go, intending it to bite anyone, Mr. Gangster, that that's enough intention, right? That if he intends the dog to be deployed, that that's sufficient to let anyone injured by the dog bring a suit? Well, not only that it's released, Your Honor, that in terms of the circumstances in which the dog was released in this occasion, a factor to consider was the fact that there were other people who the officers, deputies Bonney and Propachuk, testified to this, as well as the fact that Officer Lacoob was aware of it, were in the immediate area as well. So that, certainly that would be part of the factor, yes, where you have a situation where there's no warning and you're releasing a dog who you cannot physically control after setting him go, intending him to bite someone, and you're holding him, then, yes, I would say in these circumstances, it is appropriate to hold him, or at least it could be appropriate for jury to hold him liable, yes. But would he have to intentionally release the dog? I mean, what if he's holding the dog's collar and the dog breaks away? Then certainly not. That would not be an intentional deployment of the dog, Your Honor. I understand that's the argument that the defendants have made. However, we believe there's evidence in the form of the declarations of two non-party witnesses that directly dispute that fact. But if that was true, then if the fact finder found that to be true, certainly there would not be a violation of the Constitution. So you feel there's an issue of fact whether the officer deployed his dog? Yes. And we believe the evidence supports that he has. So what if we assume that he intended to release the dog to sick Ward? Yes. Okay. And the dog, for some odd reason, misdirects and hits some, you know, bites some person who's just walking by, like in this case, a gangster who was all frantic about what was happening. Is that a seizure of her? It is. In the literal sense, in the literal sense, it is a seizure. Additionally, in this case, the officer had ordered her to stop before the dog gets to her, but the dog's biting her is a seizure because it physically impedes and takes control of her. Doesn't the Brower case from the Supreme Court say that your client would have to have been the intended object of the dog's advance? I believe it indicates that the officers would have to have the intent to stop a person by that means. In other words, I'm distinguishing between a situation where there's a bystander who, in the officer's opinion, is interfering with a law enforcement action and the bystander, as I understand it under Brower, that would be a seizure, it would be actionable, but not a situation where a K-9 officer releases a dog intending to go after a criminal suspect, and instead the dog bites the bystander. Well, can you help us with that? Hopefully. What happens, what makes a dog different, if you will, than a firearm, for example, is that presumably an officer firing or discharging a firearm is able to, in a concrete sense, aim that firearm. Part of the nature of using a police dog as a weapon is the officer simply does not have that type of control. He knows that, and therefore it's appropriate to hold him responsible for using that weapon in that manner. That sounds like negligence. He's intentionally deploying the weapon or the dog in this case to apprehend someone. He now, in his mind subjectively, I'm sure, there's no dispute that Deputy LeCoub did not want to have a pregnant woman bystander who's concerned about her son bitten by the dog. But the fact of the matter is that in releasing and directing the dog to go after the criminal suspect, this was a foreseeable consequence of that seizure. He set that in motion by releasing that dog. So, yes, I think it is different. I think it is negligence, but I think it's also a violation. So an officer in a hypothetical situation like this who fires a his or her service revolver at a suspect, narrowly misses and hits a bystander, they would be that would be a seizure in your mind, and the officer would be responsible? Not necessarily, only if the firearm was fired or the courts have addressed the situation where if, for example, the officer says I'm going to shoot and I don't care that there are people near who I hit, that would be a different story. But if it was truly an errant bullet, no, that would not be a seizure. And you think this is different? I do. Because with the weapon, the firearm, the officer can aim it. In the case of the dog, he's releasing it knowing that it's not going to necessarily travel in a straight path and knowing that there is a documented risk of this type of result from applying or using the dog. Now, Ms. Gangster here is not – there is a remedy available for her no matter what, is that correct? That is correct, Your Honor. Under the California Dog – Dog Clause? There is. California Civil Code Section 3342 is a strict liability statute. Is that matter still pending? Pardon me? Is that matter still pending? It is in State court. Okay. All right. Do you want to stay the rest of your time for rebuttal? Sure. Thank you. Ms. McDermott. Good morning. And please report. My name is Amanda McDermott, and I'm here on behalf of the appellees, County of Sacramento and Deputy LeCouvre. The main issue for us is that it is indisputed that there's been no affirmative action to deploy the dog. There's no evidence of deployment. At best, the plaintiffs here have shown that the dog was taken out of the car in a ready position in case it was needed to be used. And the plaintiffs would like the court to then assume that because the dog ran past the suspect in order to get to the – to the plaintiff, and that there may have been some time delay in a very short window of time to call off the dog, that that is enough to show that there was intentional deployment. So your argument is, is that when the officer took the dog or allowed the dog to jump out of the back – I'd assume it was in the back seat? Yes. That – and for at least momentarily the dog was stationary? Yes. And that deployment didn't occur at all? At all. In order to deploy a dog, there must be a physical or verbal command, typically a verbal command. There's no dispute that no verbal command was ever given and no physical command was ever given. So your view of the facts is that dog comes out of the back seat, is stationary for a moment, and until the officer says whatever the command is, go, whatever, the dog has not been deployed? Correct. Did the dog – did the officer have a hold of the dog's collar? Yes. W. LeClube states that he had a grip on the collar, that the dog twisted. Apparently it wasn't good enough. Apparently it wasn't good enough, that the dog twisted out and caught his finger in there. The plaintiffs do have witnesses that say they never saw the dog held. But whether or not the dog was actually – That sounds like a disputed fact. But an immaterial disputed fact. In order to create a seizure, there must be an act – something must be set in motion to create that seizure. The instrumentality, here the dog, was never set in motion. I would have thought your argument would have been it doesn't matter whether the officer deployed the dog or not. He didn't deploy the dog at Mrs. Gangtry. Well, I don't think anyone disputes that he wasn't deployed at Mrs. Gangtry or that she was not the intended target. Here, plaintiff is trying to create a disputed fact as to whether deployment occurred. And there are – I'm not making that argument only because there are other courts and other circuits that would say if the dog is deployed, even if it was deployed at the suspect as opposed to Mrs. Gangtry, that there then could be a seizure and then there could be a need to do a reasonableness analysis on a use of force. Here we say no need to even get there, no seizure, no intentional deployment. What's the protocol? Counsel, it's sub-schooled if I could ask you a question on that. Why wouldn't there be an issue of fact whether the dog was deployed, maybe he intended to go against Ward? But why wouldn't there be an issue of fact if the dog was deployed? Because the officer never tried to call the dog back until after the dog trotted past Ward and then went after Gangtry. Well, I would say it's a very short window of time and we don't have anything in the record as to the amount of distance the dog had to cover, how fast the dog ran. I'd say it's somewhat of a semantic issue as to when exactly the stop command occurred, when exactly he yelled. To me, it's a very quick timeframe, actions happening very quickly. LeCouvre instantly called the dog off when he ran, where and when witnesses observed the dog, when they heard that command is, to me, not material as to whether the dog was deployed to apprehend or seize the suspect. Well, you could tell stop to a dog in less than a second after it broke away if you were holding a collar, right? It wouldn't have to cover a bunch of ground. You could immediately call it to stop. Well, at least that's the argument that would say that if the officer did not do that, and I thought that Gangtry had some witnesses saying the officer delayed in calling the dog back, that that would be enough to raise an issue of fact. Well, I would say that when exactly the command to stop occurred is immaterial because it was all happening together. LeCouvre lost the grip. He stumbled to get to the dog, yelled out to stop. It was all happening in a short timeframe, and that maybe that split second or those seconds in which the dog may have gotten to the suspect or passed it, and then everyone hears a stop command is not enough to show deployment. That there was no physical, intentional act to deploy the dog. So at this point, we're making assumptions to the state of mind of the dog and to LeCouvre, which is not enough for a jury to make a proper finding of fact. The county's position, as I hear it from you, is that the dog was not deployed by Officer LeCouvre. Correct. Doesn't that get into a question as to the reasonableness of his restraint of the dog? He didn't have a choke collar, for example. The dog had a choke collar. The dog was on a choke collar. He had one, but the officer- Wasn't holding it. Wasn't, chose not to use it? He didn't have him on a leash. He had him held by the collar. Do you know what a choke collar is? Yes. It's a chain that goes around the animal's neck, and the handler holds the other end, and if the dog tries to go forward, it chokes the dog. Right, and the dog and the officer didn't have him by the chain. He had him by the collar at the neck. Doesn't that tell us that there should be a, that there's a fact question as to the reasonableness of the officer's actions in not restraining the dog? Well, the dog was restrained whether he was, he was not out and on a command to apprehend or find anyone. He was controlled, whether it be by a physical handhold or by the lack of a command to apprehend or to bite. And there's nothing to suggest that just having the dog present alone is unreasonable. Would you concede that the officer did not effectively restrain the dog? No, we could, no, because he was held. Would you concede that there was a more effective way of restraining the dog? He could have been taken out of the car on the leash. Okay. However, we're not- Counsel, is it clear that to get the dog out of the car, to let him jump out of the window, that the officer had to issue an intentional command? That if the dog didn't just jump out of the window, the officer directed him to jump out. Right, he brought the dog out of the car and had him on a watch command, to watch the car in case the suspect fled and he needed to apprehend him. But there was never a command to apprehend. There was never the take him command, which would have instructed the dog to go for the suspect. What's your understanding of how intent applies in a Fourth Amendment analysis? Well, I believe there's the two steps. First, there has to be a seizure in order to even get to- What role does intent apply in the seizure analysis, then? Well, the officer would have to intend to put the instrumentality in motion in order to get to the seizure. And here, if there was no intent to set that instrumentality in motion, then no seizure. Does he have to intend to seize an object or a person? Well, yes, but I would say he has to intend that his action is going to effectuate the next action. And here, that was not the case. The intent was to have the dog available in case it was needed. So in your view, as long as the officer intentionally releases whatever it might be, with the notion in the back of his mind someplace that there's going to be an ultimate seizure, that's enough for the Fourth Amendment? Well, I would say he has to intend that it reaches the specified target. I don't think he would just intend that there be a seizure and release the dog. And if it should seize anyone, then he has intended that seizure. You made some reference to some out-of-circuit cases that you thought supported that notion that you just explained. Which ones are you thinking of? Well, I believe that in Denon, the Court determined that the dog had been taken out with the intention to find someone, to bite someone. And I apologize for that. But there was not the intent. They were chasing a particular suspect, correct, in Denon, right? Correct. And he got to the edge of the forest. Right. And they didn't know where he was. And so the fact that the dog had been taken out and intended to be used to find, to seize, to bite, the fact that he didn't bite the right person, I can't say. There was only one person, right? Right. I believe I've stated the wrong case. I'm thinking of the Garcia case, which is actually in circuit, but a lower district court. And they said that there, although it didn't bite the right person, it was still an intended seizure. And therefore, you then take the next step and analyze the reasonableness of the force based on the Fourth Amendment. Here, I don't think we get there. Garcia was a mem dispo, correct? I'm sorry? Memorandum disposition. Yes. Unpublished, correct? Correct. Oh, I'm not positive if that was unpublished. I think there was a different case that had been cited. So what out-of-circuit case were you thinking of this, that you were concerned about? I was under the impression that, and I apologize if I'm at a loss for the name of the case. Okay. That's all right. I was just curious. I thought it was a Fourth Circuit case that said, I might be wrong, but I thought that a Fourth Circuit case had said that if you deploy the dog against anyone, that that's enough for the person who gets bitten to make a gripe. It is my understanding that there is other circuit case law on that point, and I apologize that I am blanking on the name of the case. Okay. And I don't really want to argue that point for this circuit to adopt, but that was my understanding. Okay. Thank you. Thank you. Judge Gould, it's the Vericon case is what the Court's referring to, the Fourth Circuit case. In this instance, well, they knew they were going to get bitten. So you'd like us to adopt that rule, right? But they knew in Vericon. You would like us to adopt the rule of the Fourth Circuit. Yes. But in Vericon, they knew who they were sending the dog after. Yes. They knew. There was an intentional object at the end. There was one person that they were after. In that instance, there was, yes. They didn't know who was they thought somebody was in the house, but they didn't know who. Right? Yes. And they didn't give a warning. That case was all about the failure to give a warning. No, I'm not saying it's directly on point. There was no warning here either, although, in fact, in this case, prior to the dog biting this gangster, according to her declaration, which is page 59 of the Exhibit Record, paragraph number 8, she testified that the officer actually yelled for her to stop before the dog bit her. In this case, there was no effective control over the dog when he released her, which makes the actions even more unreasonable. Unlike all of the other published cases that I've seen regarding these dogs that have been cited, at least for the court, for the purpose of this motion, this dog did not respond to the officer. In fact, the officer had to beat the dog, literally, to get him off of Ms. Gangstey and even on and on to beat him, which is an indication that with that type of unpredictable weapon, it is a reasonable fact finder could find that you needed to exercise more control over this and not simply release the dog and hope that it's going to get the right person or. I have a quick fact question. Yes, sir. If you don't mind. What does the record tell us about Officer LeCoup, if I'm pronouncing his name correctly? I believe so. Whether he was aware that Ms. Gangstey was anywhere when he took the dog out of the car. The record doesn't indicate what he perceived. The other officers, Bonnie and Proper Track, who were already there, indicated that they were aware of that there were people in the area and, in fact, they had rearranged their position because of their concerns to the fact that there were obviously children and other uninvolved citizens around. So the record is silent on that point. I believe the record is. We don't know whether he was aware or wasn't aware. I believe the record is silent at the point that he took away the dog. All right. Thank you. Okay. Thank you, counsel. Thank you. We appreciate your arguments on this case and matters submitted. Interesting case.
judges: Hawkins, Gould, Paez